IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Total Petroleum Puerto Rico Corp., <br><br> Plaintiff, <br><br> v. <br><br> Montañez Service Station, Inc. et al., <br><br> Defendants. | Civil No. 19-1935 (GMM) |

## OPINION AND ORDER

Pending before the Court is plaintiff Total Petroleum Puerto Rico Corp.'s ("TPPRC") *Motion Requesting Default Judgement* (Docket No. 94) against defendant Luis Casellas-Berrios ("Casellas"). The motion is **GRANTED**.

### I.   BACKGROUND

Given that Casellas never appeared before this Court to controvert TPPRC's assertions, the Court takes as true the well-pled allegations in TPPRC's *Verified Complaint* (Docket No. 1).

A.   The Parties

TPPRC is a "franchisor" as defined by Article 101(3) of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801, et seq. (Docket No. 1 at 2 ¶ 11). TPPRC is the lessee and sub-lessor of the parcel of land and gasoline service station number 220455 located at #106 José De Diego St., San Lorenzo, Puerto Rico 00754 ("Gas Station"). (Id.). TPPRC is the sole franchisor for the sale of gasoline products under the TOTAL brand in Puerto Rico. (Id.).

Moreover, "TPPRC is exclusively authorized and licensed to use the TOTAL brand and other related trademarks in Puerto Rico. . ." (<u>Id.</u> at 7 ¶ 26).

Montañez Service Station, Inc. ("MS") is the sub-lessee of the Gas Station and is a "franchisee" as defined by Article 101(4) of the PMPA, 15 U.S.C. § 2801(4). (<u>Id.</u> at 4 ¶ 13). Pedro Montañez Dones ("Pedro Montañez") is the former president of MS. (<u>Id.</u> at 4 ¶ 14). Carlos Montañez Dones ("Carlos Montañez") and his wife, Juanita Torres Roldan ("Torres"), are the owners of the parcel of land and the Gas Station located at #106 José De Diego St., San Lorenzo, Puerto Rico. (Docket No. 1 at 4 ¶ 15).

Casellas claims to be legally entitled to operate the Gas Station pursuant to a purported lease executed without TPPRC's consent. (<u>Id.</u> at 4-5 ¶ 16).

B.   <u>The TOTAL brand and Trademarks</u>

The TOTAL brand is an internationally known trademark of a large petroleum conglomerate registered with the United States Patent & Trademark Office. (Docket Nos. 1 at 5 ¶¶ 17, 19). The TOTAL brand's logo and trade dress include "an elliptic globe formed by strips featuring the colors red, blue, yellow, and white. It also features the word TOTAL in red displayed. . ." (Docket Nos. 1 at 5 ¶ 17; and 1-1). The TOTAL brand products include "petroleum fuels, lubricants, coolants, service stations, convenience stores and fleet cards, among others." (Docket Nos. 1

at 5 ¶ 18; and 1-3). Further, a TOTAL branded gas station "prominently displays the TOTAL brand logos, trade dress, identifications and color patterns." (Docket Nos. 1 at 5 ¶ 18; 1-2; and 1-3).

    C.  <u>Relevant Facts</u>

On September 18, 2014, TPPRC entered into a *Lease Agreement* with Carlos Montañez and his wife Torres, through their conjugal partnership ("Montañez-Torres Conjugal Partnership") for the use of their property, located at #106 José De Diego St., San Lorenzo, Puerto Rico. The *Lease Agreement* included the Gas Station. (Docket No. 1 at 7 ¶ 27). The *Lease Agreement* was later ratified into a *Deed of Lease* ("*Deed*") on March 5, 2015. (<u>Id.</u>; Docket No. 31-1). The *Deed* was duly registered in the Puerto Rico Property Registry. (Docket No. 1 at 7 ¶ 27).

The *Deed* has a term of twelve years, starting on October 1, 2014, and ending on September 30, 2026. (Docket Nos. 1 at 7 ¶ 28; and Docket No. 31-1 at 6). Pursuant to the terms of the *Deed*, TPPRC paid Carlos Montañez $50,000 in exchange for the ability to operate and provide all services supplied under the TOTAL brand at the Gas Station. (Docket Nos. 1 at 7 ¶ 29, 8 ¶ 32; and 31-1 at 9-10). By securing access to the property, TPPRC aimed to establish a presence and develop TPPRC's market share in the geographical area where the Gas Station is located. (Docket No. 1 at 8 ¶ 32).

The *Deed* grants TPPRC the right to designate a party as a franchisee, who is entitled to operate the Gas Station by means of a sub-lease and/or fuel supply agreement. (Docket No. 31-1 at 9-10). The *Deed* further grants TPPRC the right to unilaterally sub-lease, assign, or mortgage the *Deed*, in whole or in part, without the prior consent of the Montañez-Torres Conjugal Partnership. (Id. at 15).

   1.   *Sub-Lease Agreement*

On December 10, 2015, TPPRC entered into a *Sub-Lease Agreement* with MS, for the use and operation of the Gas Station ("*Sub-Lease Agreement*"). (Id. ¶ 33; Docket No. 30-2). The main consideration of the *Sub-Lease Agreement* is the ability to sell fuel and provide all associated services at the Gas Station under the TOTAL brand.

Pursuant to the *Sub-Lease Agreement*, TPPRC and/or its affiliates are the exclusive owners of the TOTAL brand. (Docket Nos. 1 at 8-9 ¶ 37; and 30-2 at 5). Thus, the franchisee's use of the TOTAL brand is limited to the operation of the Gas Station under the brand and the sale of TOTAL branded products. (Docket Nos. 1 at 8-9 ¶ 37; and 30-2 at 5). The *Sub-Lease Agreement* does not confer upon MS any goodwill or interest relating to MS's use of the TOTAL brand. (Docket No. 30-2 at 5). Indeed, the *Sub-Lease Agreement* provides that TPPRC, at its full discretion, can require MS to discontinue the use of the TOTAL brand. (Id. at 6). The *Sub-Lease Agreement*'s terms and conditions regarding the use of the

TOTAL brand constitute "important, reasonable, and material obligations," the breach of which would result in the termination of the *Sub-Lease Agreement* and the *Sale and Supply Agreement*. (Id.).

The *Sub-Lease Agreement* prohibits MS from transferring or assigning the same, without the prior written consent of TPPRC. (Id. at 11, 23). Any such transfer or assignment without the prior written consent of TPPRC are grounds for the termination of the *Sub-Lease Agreement*. (Id. at 20-21). The *Sub-Lease Agreement*'s sub-leasing right over the Gas Station ran from January 1, 2016 through December 31, 2019. (Id. at 3).

>    2.   Sale and Supply Agreement

Concurrently to the execution of the *Sub-Lease Agreement*, TPPRC and MS entered into a *Sale and Supply Agreement*, through which TPPRC sells and supplies to MS gasoline, motor fuel, and other oil products under the TOTAL brand for their sale at the Gas Station. (Docket Nos. 30-2 at 1 ¶ C; and 30-3 at 2 ¶ D). The *Sale and Supply Agreement* ran from December 1, 2015, through November 30, 2018. (Docket No. 30-3 at 5).

The *Sale and Supply Agreement* (together with the *Sub-Lease Agreement*, the "*Franchise Agreements*") grants MS the right to use TPPRC's equipment, gasoline pumps, and other assets used for the sale of gasoline and motor fuels, which are located at the Gas Station. (Docket No. 30-2 at 1 ¶ C). A breach of either the *Sub-*

Civil No. 19-1935(GMM)
Page -6-

*Lease Agreement* or the *Sale and Supply Agreement* constitutes a breach of both agreements. (Docket Nos. 1 at 8 ¶ 34; and 30-2 at 25-26) ("The parties agree that both the nature and the subject of the agreements signed on this date are so expressly tied to each other, a breach of any of the provisions, clauses, terms and conditions of any of the Supplementary Agreements shall entitle [TPPRC] to terminate and not renew the existing business relationship, that is, this Agreement and the Supplementary Agreements.").

The *Sale and Supply Agreement* provides that MS will buy, receive, and pay for the TOTAL brand products and will pay for each delivery of TOTAL petroleum products by direct deposit from its bank account. (Docket No. 30-3 at 4). Moreover, pursuant to the *Sale and Supply Agreement*, MS can only use the marks, registered marks, trademarks, names, service distinctions, and/or color patterns that TPPRC authorizes MS to use as part of the operation of the Gas Station. (Id. at 9-10). Under the *Franchise Agreements*, MS must obtain TPPRC's prior written consent prior to assigning or transferring all or part of its obligations under the *Sale and Supply Agreement*. (Id. at 22).

3.   MS's and Casellas' Unauthorized Assignment of the Contracts

According to TPPRC, on April 24, 2019, MS assigned or transferred its rights and obligations under the *Franchise*

*Agreements* to Casellas ("secondary agreement"). (Docket Nos. 1 at 15 ¶ 63; and 30-5 at 1). Pursuant to the supposed secondary agreement, Casellas would pay Carlos Montañez a monthly rent of $1,000 for a term of ten (10) years, from May 1, 2019 to May 1, 2029. (Docket Nos. 1 at 15 ¶ 63; 30-5 at 1). According to TPPRC, Casellas claims to be the authorized retailer and tenant of the Gas Station by virtue of the secondary agreement between MS and himself. Carlos Montañez nor MS requested prior written authorization from TPPRC to transfer or assign the *Franchise Agreements* to Casellas. (Docket No. 1 at 15 ¶ 64). TPPRC did not consent to the transfer of the *Franchise Agreements*. (Id.).

TPPRC sustains that MS represented to it that Casellas was an administrator of the Gas Station. (Docket No. 1 at 16 ¶ 68). Conversely, TPPRC states that Casellas claims that he was the authorized retailer and the person entitled to operate the Gas Station under the *Franchise Agreements*. (Id. at 18 ¶ 79).

### 4.   Verified Complaint and Casellas' Default

The above serves as the backdrop of TPPRC's *Verified Complaint* (Docket No. 1).[1] TPPRC sustains that due to the unauthorized transfer or assignment of the *Franchise Agreements* by MS and/or

---

[1] The Court notes that TPPRC and co-defendants MS, Carlos Montañez, Torres, and Pedro Montañez reached a settlement agreement. (*See* Docket No. 66). Accordingly, TPPRC and the named co-defendants voluntary dismissed their claims against one another. The only claims pending before the Court are TPPRC's *Verified Complaint* (Docket No. 1) and MS's and Carlos Montañez's *Cross Claim* (Docket No. 65) against Casellas, as described in each of their motions requesting default judgment against Casellas. (Docket Nos. 93 and 94).

Carlos Montañez to Casellas, the latter's use of the TOTAL brand constituted an act of trademark infringement. (Docket No. 1 at 25 ¶ 106). Further, Casellas' acts of operating a business as a TOTAL branded site also constituted trademark infringement. (Id. ¶ 107). According to TPPRC, Casellas' actions diluted and tarnished the TOTAL brand. (Id. ¶ 112).

TPPRC requests that the Court permanently enjoins Casellas, his agents, servants, employees, representatives, and all others in active concert or participation with them from using the TOTAL brand, altering or covering the TOTAL brand, promoting or advertising that he is formerly a TPPRC franchisee for the Gas Station, using TPPRC's operating manuals, training manuals, sales manuals and aids, advertising and promotional materials, and all trade secret and confidential and proprietary material delivered to MS. They further ask that the Court instructs Casellas: to (1) stop infringing, diluting, and tarnishing the TOTAL trademark, goodwill, and reputation at the Gas Station; and (2) immediately surrender to TPPRC all stationery, letterheads, forms, manuals, printed material, films, books, cassettes, videotapes, licensed software and advertising containing the TOTAL brand, including, but not limited to the proprietary TOTAL brand, as it applies to the Gas Station.

TPPRC also seeks a declaratory judgment stating that: (1) Casellas was a mere administrator of the Gas Station, with no

rights under applicable state and federal law regulating the *Franchise Agreements* executed by MS and TPPRC; (2) Casellas' use and disposition of the TOTAL brand, trade name, trade dress, logos, signage, and other related identification at the Gas Station, was and is illegal and unauthorized; (3) Casellas is required to indemnify, reimburse and/or compensate TPPRC for all expenses, losses, damages, or liabilities, including but not limited to, costs and attorneys' fees that TPPRC sustains or could sustain as a consequence of any act or omission which may have caused or may cause harm to third parties, and for any expense, cost, loss, or damage sustained by TPPRC as a consequence of any claim made by any person or entity as a result of his deceptive and illegal acts at the Gas Station, including but not limited to, gasoline spills, leaks from the underground storage tanks, fires, explosions, and slip and fall incidents, among other events.

Lastly, TPPRC requests a hearing to determine damages requested within the *Verified Complaint* for loss of future revenues, damages resulting from Casellas' conduct, treble damages, and attorneys' fees, costs, and expenses.

On October 1, 2019, TPPRC served process of the *Verified Complaint* and summons upon Casellas. (Docket Nos. 10; 10-1; 59 at 1 ¶ 2). On October 2, 2019, the Court ordered Casellas to answer the *Verified Complaint* by October 17, 2019. (Docket No. 14). Casellas failed to appear before the Court. Accordingly, on

February 21, 2020, TPPRC moved for an entry of default as to Casellas. (Docket No. 53). On February 24, 2023, the Clerk entered the default against Casellas. (Docket No. 58).

On July 1, 2021, TPPRC filed the instant *Motion Requesting Default Judgement*. (Docket No. 94).

## II.  LEGAL STANDARDS

### A.  Default Judgment

Rule Fed. R. Civ. P. 55 ("Rule 55") controls default judgments. Rule 55 decrees that the clerk must enter a party's default when it has failed to plead or otherwise defend against a party who is seeking affirmative relief. *See* Fed. R. Civ. P. 55(a). The effect of the entry of default is simple, "[a] party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability. . ." Franco v. Selective Ins. Co., 184 F.3d 4, 9 n.3 (1st Cir. 1999); *see also* In re The Home Restaurants, Inc., 285 F.3d 111, 114 (1st Cir. 2002); Metropolitan Life Ins. Co. v. Colon Rivera, 204 F.Supp.2d 273, 274-75 (D.P.R. 2002). "The court may also examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002) (*citing* Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992)).

Pursuant to Rule 55(b), once a default is entered "a plaintiff 'must apply to the court for a default judgment' where the amount of damages claimed is not a sum certain." <u>Vázquez-Baldonado v. Domenech</u>, 792 F.Supp.2d 218, 221 (D.P.R. 2011) (*quoting* Fed. R. Civ. P. 55(b)); *see also* <u>Guardian Insurance Company v. SPIRITED, LLC,</u> Civil No. 21-1631 (RAM), 2022 WL 1315203 at *1 (D.P.R. April 27, 2022).

B.   <u>Declaratory Judgment</u>

Pursuant to the Declaratory Judgment Act ("DJA"):

> In a case of actual controversy within its jurisdiction.
> . .any court of the United States, upon the filing of an
> appropriate pleading, may declare the rights and other
> legal relations of any interested party seeking such
> declaration, whether or not further relief is or could
> be sought. Any such declaration shall have the force and
> effect of a final judgment or decree and shall be
> reviewable as such.

28 U.S.C. § 2201. According to the Supreme Court, "the phrase 'case of actual controversy' in the [DJA] refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118, 127 (2007) (*citing* <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 240 (1937)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Id.</u> (*quoting* <u>Maryland Casualty Co. v.</u>

Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)); *see also* In re Financial Oversight & Management Board of Puerto Rico, 916 F.3d 98, 111 (1st Cir. 2019) (holding that advisory opinions as to past differences are not amenable to the type of relief that Article III allows courts to give —"'decree[s] of a conclusive character' adjudicating adverse parties' actual rights and interests.") (*quoting* Aetna, 300 U.S. at 241). Further, the decision of whether to issue a declaratory judgment is within the sound discretion of the court. *See* A.L. Mechling Barge Lines, Inc. v. U.S., 368 U.S. 324, 331 (1961).

    C.   Permanent Injunction

In the context of trademarks, "[a] permanent injunction issues to a party after winning on the merits and is ordinarily granted upon a finding of trademark infringement." Lermer Germany GmbH v. Lermer Corp., 94 F.3d 1575, 1577 (Fed. Cir. 1996) (*citing* 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30.01, at 30-5 (3d ed. 1994)). In seeking permanent injunctive relief,

> [a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Civil No. 19-1935(GMM)
Page -13-

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (*citing* Weinberger v. Romero—Barcelo*,* 456 U.S. 305, 311-313 (1982); Amoco Production Co. v. Gambell*,* 480 U.S. 531, 542 (1987)); *see also* Greene v. Ablon, 794 F.3d 133, 156-57 (1st Cir. 2015); Esso Standard Oil Co. v. Lopez-Freytes, 522 F.3d 136, 148 (1st Cir. 2008).[2]

### III.   APPLICABLE LAW

A.   Trademark Infringement

"The purpose of a trademark is to identify and distinguish the goods of one party from those of another. To the purchasing public, a trademark 'signif[ies] that all goods bearing the trademark' originated from the same source and that 'all goods bearing the trademark are of an equal level of quality.'" Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 60 (1st Cir. 2008) (*quoting* Colt Def. LLC v. Bushmaster Firearms, Inc., 486 F.3d 701, 705 (1st Cir. 2007)). To establish trademark infringement under the Lanham Trade-Mark Act, 15 U.S.C. §§ 1051-1127 ("Lanham Act"), the plaintiff must prove that: (1) it owns and uses the mark(s) in dispute; (2) that the defendant used the same or similar mark(s) without plaintiff's permission; and (3) that the

---

[2] Note that the test for permanent injunctive relief, is essentially the same as the test for preliminary injunctive relief, except that "the movant must show actual success on the merits of the claim, rather than a mere likelihood of success." *See* Esso Standard Oil Co. v. Freytes, 467 F.Supp.2d 156, 159 (D.P.R. 2006) (*quoting* Caroline T. v. Hudson Schoool Dist., 915 F.2d 752, 755 (1st Cir. 1990)).

defendant's use of plaintiff's mark(s) likely confused the consumers, thereby causing harm to plaintiff. *See* id. (*citing* Star Fin. Servs., Inc. v. AASTAR Mortgage Corp., 89 F.3d 5, 9 (1st Cir. 1996); 15 U.S.C. § 1125(a)). In examining the likelihood of confusion, the First Circuit focuses on eight factors:

> (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark.... No one factor is necessarily determinative, but each must be considered.

I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 43 (1st Cir. 1998) (*quoting* Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 29 (1st Cir. 1989)). However, the First Circuit has decreed that the list is illustrative since "the purpose of the inquiry is simply to determine whether 'the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.'" *See* The Shell Co. (Puerto Rico) Ltd. v. Los Frailes Service Station, Inc., 605 F.3d 10, 21-22 (1st Cir. 2010) (*quoting* Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 201 (1st Cir. 1996)).

    B.   PMPA

The PMPA "is a conventional dealer-protection statute limiting the circumstances in which a motor fuel franchisor

can terminate or choose not to renew a franchise relationship." Santiago-Sepulveda v. Esso Standard Oil Co. (Puerto Rico), Inc., 643 F.3d 1, 4 (1st Cir. 2011). The statute "rests on the perceived disparity of bargaining power between franchisor and franchisee, coupled with concerns said to be peculiar to franchising." Id. (internal quotations and citations omitted).

For the purposes of the PMPA, the term "franchise" means any contract

> (iv) between a distributor and a retailer, under which a. . .distributor. . .authorizes or permits a retailer. . .to use, in connection with the sale, consignment, or distribution of motor fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use.

15 U.S.C. § 2801 (1)(A). Under the PMPA, the distributor is considered the "franchisor" and the retailer the "franchisee." *See* 15 U.S.C. § 2801 (3) and (4).

According to the PMPA, a transfer or an assignment of the franchise needs to fulfill the requirements of said franchise. *See* 15 U.S.C. § 2806 (b)(1). This is to say, the PMPA does not prevent assignments or transfers of the franchise provided that such assignments or transfers comply with the provisions of the franchise.

Civil No. 19-1935(GMM)
Page -16-

## IV.   ANALYSIS

A.   <u>TPPRC Properly Requested that the Court Enter a Default Judgment</u>

Foremost, the Court finds that TPPRC adhered to the procedural requirements of the default judgment process. That is, TPPRC, on February 21, 2020, moved for an entry of default as to Casellas. (Docket No. 53). On February 24, 2023, the Clerk entered the default against Casellas. (Docket No. 58). Later, on July 1, 2021, TPPRC moved the Court to enter a default judgment against Casellas pursuant to Fed. R. Civ. P. 55(b), since the damages claimed in this case are not a sum certain. (Docket No. 94). Thus, the Court shall next evaluate the merits of the claims brought in the *Verified Complaint*.

B.   <u>Casellas was a Mere Administrator of the Gas Station and he incurred in Trademark Infringement through his Use of TPPRC's Trademark</u>

1.   <u>"Actual Controversy" Under the DJA</u>

First, the Court must ascertain whether the present issue constitutes an "actual controversy" under the DJA. *See* <u>Maryland Cas. Co.</u>, 312 U.S. at 272. To ensure that a declaratory judgment is not granted in speculative situations, a court must assess "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Id.</u> at 273. TPPRC need

not wait for the consummation of a threatened injury to obtain preventative relief. *See* State of R.I. v. Narragansett Indian Tribe, 19 F.3d 685, 693 (1st Cir. 1994) (*quoting* Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev't Comm'n, 461 U.S. 190, 201 (1983)). TPPRC need only demonstrate that injury is "certainly impending." *See* id.

TPPRC seeks declaratory judgment that Casellas, the self-proclaimed authorized retailer, was a mere administrator of the Gas Station, with no rights under the *Franchise Agreements* between MS and TPPRC. This point is critical, since such a declaration would mean that Casellas' use of TPPRC's trademark, *i.e.* the TOTAL brand, was unauthorized. It is thus evident that declaratory judgment can be rendered in this case. If the Court decrees that Casellas had rights under the *Franchise Agreements*, then his use of TPPRC's trademark was legal. If, on the other hand, the Court were to decree that Casellas was a mere administrator of the Gas Station, with no rights under the *Franchise Agreements*, then his use of TPPRC's trademark was illegal and caused irreparable injury to TPPRC. As such, the facts alleged by TPPRC present an actual controversy under the DJA.

> 2.  Casellas has No Rights under the *Franchise Agreements*

While the PMPA allows for the transfer or assignment of a franchise, the Act also provides that said transfer or assignment

must comply with the provisions of that franchise. Here, the *Deed* entered between the Montañez-Torres Conjugal Partnership and TPPRC exclusively grants TPPRC the right to designate a person or entity as a franchisee to operate the Gas Station by means of a sub-lease and/or fuel supply agreement. It is through this right that TPPRC entered a franchise, the *Sub-Lease Agreement* and the *Sale and Supply Agreement*, with MS for the operation of the Gas Station. TPPRC's right to designate a person or entity as a franchisee to operate the Gas Station ends on September 30, 2026. (Docket No. 31-1 at 6).

The *Sub-Lease Agreement* provides certain requirements that must be fulfilled before MS's right to operate the Gas Station can be transferred. For example, Article 10.4(e) of the *Sub-Lease Agreement* requires that: (1) MS pay TPPRC certain royalties by certified check, and (2) TPPRC be allowed to evaluate any potential assignee. (*See* Docket No. 30-2 at 11). More importantly, and relevant here, Article 18.1 of the *Sub-Lease Agreement* obliges MS to obtain TPPRC's written consent prior to assigning or transferring its rights under the *Sub-Lease Agreement* to a third party such as Casellas. (*See* id. at 23) ("This Agreement may not be assigned or transferred, in whole or in part, by [MS] without the prior written consent of [TPPRC] to be granted at its sole and absolute discretion."). Likewise, Article 20.1 of the *Sale and Supply Agreement* prohibits the assignment or transfer by MS of its

Civil No. 19-1935(GMM)
Page -19-

obligations without the prior written consent of TPPRC. (*See* Docket No. 30-3 at 22) ("This Agreement may not be assigned or transferred, in whole or in part, by [MS] without the prior written consent of [TPPRC] to be granted at its sole and absolute discretion.").

According to the well-pled factual allegations in TPPRC's Complaint, TPPRC never consented in writing to the transfer or assignment of the *Franchise Agreements* to Casellas. (Docket No. 1 at 15 ¶ 64). As such, the Court finds that Casellas could not have acquired any rights under the *Franchise Agreements* and thus cannot be considered a retailer or a franchisee under the PMPA.[3] Because Casellas did not acquire any rights under the *Franchise Agreements*, the Court also finds that Casellas' use and disposition of the TOTAL brand, trade name, trade dress, logos, signage, and other related identification at the Gas Station was and is illegal.[4]

---

[3] The Court notes that even if the *Franchise Agreements* expired on November 30, 2018, the Court's conclusion would be the same. Indeed, TPPRC has the right to sub-lease the Gas Station to a retailer for the purpose of operating the Gas Station until September 30, 2026. (Docket No. 31-1 at 6, 9-10). As such, without TPPRC's consent, Casellas could never have become a retailer, or a franchisee under the PMPA. Likewise, Casellas could not have acquired any right to use and dispose of the TOTAL brand, without such consent.

[4] TPPRC also requests that the Court declare that Casellas must indemnify, reimburse, and/or compensate TPPRC for all expenses, losses, damages, or liabilities, that TPPRC could sustain because of any act or omission which may cause harm to third parties because of Casellas' deceptive and illegal acts at the Gas Station. The Court finds that this request for declaratory judgment is wholly speculative and hypothetical. TPPRC has not shown actual present harm or the significant possibility of future harm. Consequently, the Court will not render a declaratory judgment in this regard.

### 3.   Casellas Infringed TPPRC's Trademark

To prevail in a trademark infringement suit, TPPRC must show that (1) it owns and uses the mark in dispute; (2) Casellas used the same or similar mark without TPPRC's permission; and (3) that Casellas' use of TPPRC's mark likely confused consumers, thereby causing harm to TPPRC.

#### a.   TPPRC Owns the TOTAL Mark

As to the first factor, TPPRC pled that in Puerto Rico it is (1) the sole franchisor for the sale of gasoline products under the TOTAL brand and (2) the entity that is exclusively authorized and licensed to use the TOTAL brand and other related trademarks.

#### b.   Casellas Used the Same Mark

As to the second factor, Casellas used TPPRC's marks without TPPRC's permission while operating the Gas Station.

#### c.   Consumers are Likely to be Confused by Casellas' Use of TPPRC's Mark

As to the third factor, the likelihood of confusion, the First Circuit has instructed courts to consider eight factors, none of which are determinative. Those factors are the following: (1) similarity of the marks; (2) similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of

the plaintiff's mark. *See* I.P. Lund Trading ApS, 163 F.3d at 43. Factors three through five are usually treated together in this circuit. *See* Total Petroleum Puerto Rico Corp. v. Colon-Colon, 577 F.Supp.2d 537, 550 (D.P.R. 2008) (*citing* Aktiebolaget Electrolux v. Armatron Int'l, Inc., 999 F.2d 1, 3 n. 3 (1st Cir. 1993)).

First, Casellas used TPPRC's mark to sell virtually the same goods as TPPRC. As such, "under this factor, there is a strong likelihood of confusion." *See* Boston Athletic Ass'n v. Sullivan, 867 F.2d at 29.

Second, Casellas was an unauthorized retailer operating the Gas Station and using TOTAL branding without TPPRC's permission. So, TPPRC and Casellas "operate" in the same trade. Also, the classes of prospective purchasers are the same. Now, while TPPRC has not shown proof of actual confusion, the Court finds that consumer confusion appears likely: consumers have no way of knowing that Casellas' "business is anything other than an authorized [TPPRC] station." *See* Chevron Puerto Rico, LLC v. Perez-Rosado, 673 F.Supp.2d 69, 74 (D.P.R. 2009); *see also* PC Puerto Rico LLC v. El Smaili, 925 F.Supp.2d 222, 229 (D.P.R. 2013); Professional Golfers Ass'n of America v. Bankers Life & Cas. Co., 514 F.2d 665, 670 (5th Cir. 1975) (holding that falsely suggesting affiliation with the trademark owner in a manner likely to cause confusion as to the source constitutes infringement).

Civil No. 19-1935(GMM)
Page -22-

Finally, this District has already decreed that TPPRC's mark is "easily identifiable in its field of business" and that TPPRC has "owned [its] trademarks for a significant length of time. . ." Total Petroleum Puerto Rico Corp., 577 F.Supp.2d at 551.

Considering the above, the likelihood of confusion of TPPRC's trademark is very high. The Court accordingly finds that TPPRC has properly pled that Casillas infringed its trademark.

C.  **Casellas Shall be Enjoined from Using the TOTAL Brand and related Trademarks**

The Court also finds that the factors it must consider before issuing permanent injunctive relief against Casellas weigh in favor of TPPRC. These factors include the demonstration of irreparable injury incurred by the Plaintiff, the available remedies at law, the comparable hardships endured by the Parties, and the public interest in the issuance of a permanent injunction. *See* eBay Inc., 547 U.S. at 391.

1.  **Irreparable Injury and Lack of Available Remedies at Law**

In the context of trademarks, courts have recognized that "the damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law." Processed Plastic Co. v. Warner Communications, Inc., 675 F.2d 852, 858 (7th Cir. 1982) (*citing* Ideal Industries, Inc. v. Gardner Bender, Inc., 612 F.2d 1018, 1024 (7th Cir. 1979), cert. denied, 447 U.S. 924 (1980). Indeed,

"[a] finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." *See* Jordan K. Rand, Ltd. v. Lazoff Bros, Inc., 537 F.Supp. 587, 597 (D.P.R. 1982). The irreparable injury arises due to the infringer depriving plaintiff of its "ability to control the nature and quality of a product which the public believes it provides. *See* id. Further, even if the infringer "matched the high quality of plaintiff's product. . .plaintiff is still entitled to have its reputation within its control." Id. (*citing* Ambassador East, Inc. v. Orsatti, Inc., 257 F.2d 79, 82 (3d Cir. 1958); Louis Rich, Inc. v. Horace W. Longacre, Inc., 42 F.Supp. 1327 (E.D.Pa. 1976)). Damage to TPPRC's goodwill, which has an intangible value, should also be considered. *See* Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190, 1195 (2d Cir. 1971); *see also* Jordan K. Rand, LTD, 537 F.Supp. at 597. Because this Court finds that Casellas breached TPPRC's trademark, this factor easily weights in favor of TPPRC.

## 2.   Alternative available remedies at law

As to the second factor, the Court finds that other available remedies are inadequate to redress TPPRC's injuries. Plainly, TPPRC's alleged injuries — *i.e.* loss of goodwill, reputational harm, and loss of brand control — are the type of injuries that cannot be cured through the award of monetary damages. *See* Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 20 (1st

Cir. 1996) ("By its very nature injury to goodwill and reputation is not easily measured or fully compensable in [monetary] damages."). As such, the Court finds otherwise available legal monetary damages to be insufficient in remedying TPPRC's suffered harm.

### 3.   Balance of Hardships

The Court must next consider "the hardship that will befall the nonmovant if the injunction issues. . .with the hardship that will befall the movant if the injunction does not issue." Mercado-Salinas v. Bart Enterprises Int'l, Ltd., 671 F.3d 12, 19 (1st Cir. 2011).

In trademark infringement cases, courts "have ruled that the balance of harms favors the owner [of the trademark] because of the loss of good will or public confusion that may result in the absence of a [permanent] injunction." Wright & Miller, Grounds for Granting or Denying a Preliminary Injunction—Balancing Hardship to Parties, 11A Fed. Prac. & Proc. Civ. § 2948.2 (3d ed.); see also Total Petroleum Puerto Rico Corp., 577 F.Supp.2d at 552; Coca-Cola Co. v. Purdy, 382 F.3d 774, 789 (8th Cir. 2004). Consequently, the balance of hardships factors sways in favor of TPPRC.

### 4.   Public Interest

The final factor, where the public interest lies, also sways in favor of TPPRC. After all, it serves the public interest to prevent potential customers, who rely on the strength of TPPRC's

trademark and quality of product, from being erroneously induced into purchasing petroleum products from an unauthorized retailer. *See* <u>Total Petroleum Puerto Rico Corp.</u>, 577 F.Supp.2d at 552.

In all, Casellas' actions caused irreparable harm to TPPRC, and thus the latter's request for permanent injunctive relief is proper under the circumstances.

D. <u>TPPRC's Allegations Against Casellas Also Amount to Dilution by Tarnishment</u>

Lastly, TPPRC also alleges that Casellas tarnished the TOTAL brand. (*See* Docket No. 1 at 22-24). Although TPPRC does not develop argumentation as to this point, the Court finds that the factual allegations in the *Verified Complaint*, taken as true, amount to tarnishment at the hands of Casellas.

In the relevant part, the Lanham Act provides that:

> [T]he owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c). Dilution by tarnishment is defined as the "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). Further, tarnishment "generally arises when the plaintiff's trademark is linked to products of

shoddy quality, or is portrayed in an unwholesome or unsavory
context likely to evoke unflattering thoughts about the owner's
product." <u>Deere & Co. v. MTD Products, Inc.</u>, 41 F.3d 39, 43 (2d
Cir. 1994). In such situations, "the trademark's reputation and
commercial value might be diminished because. . .the defendant's
use reduces the trademark's reputation and standing in the eyes of
consumers as a wholesome identifier of the owner's products or
services." <u>Id.</u>

According to TPPRC, even though it "is unaware of exactly
what Defendants are doing at the [Gas] Station," Casellas and MS
ultimately failed to operate the Gas Station and/or remove the
TOTAL trademarks. (Docket No. 1 at 23 ¶ 96, 24 ¶ 104, 25-26). As
such, TPPRC claims that consumers were met with a Gas Station that
was "closed with no TOTAL Branded products for sale while
displaying the TOTAL Brand trademarks and/or from which said
trademarks have been illegally removed." (Docket No. 1 at 23 ¶
97).

This District has previously found failure to operate the Gas
Station while displaying the TOTAL mark to constitute dilution by
tarnishment. *See* <u>PC Puerto Rico LLC</u>, 925 F.Supp.2d at 229
("Defendant is fraudulently representing himself to the general
public and consumers as a PCPR franchisee by continuing to
demonstrate the Texaco brand while keeping the stations closed
from operation. . .[t]hose acts tarnish and dilute the Texaco

marks."); <u>Total Petroleum Puerto Rico Corp. v. Quintana</u>, Civil No. 16-2979 (GAG), 2016 WL 6998612, at *1 (D.P.R. Nov. 30, 2016) ("Defendants are displaying the TOTAL Brand, trademarks, color patterns, logo, and overall look and appearance at the property without fuel available for sale, which constitutes dilution and tarnishment."); <u>Total Petroleum Puerto Rico Corp. v. TC Oil, Corp.</u>, Civil No. 09-1105 (JP), 2009 WL 702226, at *5 (D.P.R. Mar. 11, 2009) ("[T]he Court finds that Plaintiff is likely to succeed on the merits of its trademark infringement claim, given that Defendant is displaying Plaintiff's marks at a gasoline service station that no longer sells gasoline, thereby confusing consumers and diluting Plaintiff's marks."); <u>Total Petroleum Puerto Rico Corporation v. Claudio Cruz</u>, Civil No. 11-1083 (FAB/BJM), 2011 WL 13351062, at *7 (D.P.R. May 6, 2011) ("[I]t is also likely that the franchisor's mark will be tarnished where, as here, 'Defendant is displaying Plaintiff's marks at a gasoline service station that no longer sells gasoline.'"), aff'd at 2011 WL 13351054.

The Court here aligns its analysis with the prior opinions of this District and concludes that Casellas tarnished the TOTAL brand through dilution.

## V.   CONCLUSION

The Court **GRANTS** TPPRC's *Motion Requesting Default Judgement*, as detailed above. The Court will schedule a hearing to determine the actual damages suffered by TPPRC due to Casellas' trademark

infringement in due course. *See* Fed. R. Civ. P. 55(b)(2); 15 U.S.C. § 1117(a).

Casellas', his agents, servants, employees, representatives, and all others in active concert or participation with them, are hereby **ENJOINED** and restrained from using the TPPRC trademarks and the TOTAL brand; promoting or advertising that he is formerly a TPPRC franchisee for the marketing premises of the Gas Station located at #106 José De Diego Street, San Lorenzo, Puerto Rico; using TPPRC's operating manuals, training manuals, sales manuals and aids, advertising and promotional materials; and using all trade secret and confidential and proprietary material that they might have acquired without TPPRC's permission. Casellas, his agents, servants, employees, representatives, and all others in active concert or participation with them are also instructed to surrender to TPPRC all stationary, letterheads, forms, manuals, printed material, films, books cassettes, videotapes, licensed software and advertising containing the TOTAL brand belonging to TPPRC as it applies to the Gas Station located at #106 José De Diego Street, San Lorenzo, Puerto Rico.

IT IS SO ORDERED.

In San Juan, Puerto Rico, May 16, 2024.

<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE