**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

Total Petroleum Puerto Rico Corp.,

        Plaintiff,

        v.

Montañez Service Station, Inc. et al.,

        Defendants.

**Civil No. 19-1935 (GMM)**

## OPINION AND ORDER

### I.    INTRODUCTION

On September 30, 2019, Total Petroleum Puerto Rico Corp. ("TPPRC") filed a *Verified Complaint* ("Complaint") against Luis Casellas-Berríos ("Casellas"). It requested the Court to enter a temporary restraining order, a preliminary and permanent injunction order, and judgment regarding the use of TPPRC brands and seeking damages and attorney's fees resulting from Casella's illegal conduct. (Docket No. 1).

On February 24, 2020, the Clerk of the Court entered default as to Casellas. (Docket No. 58). Eventually, on July 1, 2021, TPPRC filed its *Motion Requesting Default Judgment*. (Docket No. 94). To that extent, on May 16, 2024, the Court issued an *Opinion and Order*. It granted in part and denied in part the motion as to TPPRC's request for declaratory judgment. Furthermore, the Court held a hearing to ascertain the appropriate damages to be awarded against Casellas. As such, the only outstanding matter before the

Court is to determine the quantum of damages, if any, to be awarded to TPPRC.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

In entering a judgment of default against Casellas, the Court adopted all well-pled facts in TPPRC's *Verified Complaint* ("Complaint") (Docket No. 1). As such, the Court notes that TPPRC is a "franchisor" as defined by Article 101(3) of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801, et seq. (Docket No. 1 at 2 ¶ 11). TPPRC is the lessee and sub-lessor of the parcel of land and gasoline service station number 220455 located at #106 José De Diego St., San Lorenzo, Puerto Rico 00754 ("Gas Station"). (Id.). TPPRC is the sole franchisor for the sale of gasoline products under the TOTAL brand in Puerto Rico. (Id.). Moreover, "TPPRC is exclusively authorized and licensed to use the TOTAL brand and other related trademarks in Puerto Rico. . ." (Id. at 7 ¶ 26).

Montañez Service Station, Inc. ("MS") is the sub-lessee of the Gas Station and is a "franchisee" as defined by Article 101(4) of the PMPA, 15 U.S.C. § 2801(4). (Id. at 4 ¶ 13). Pedro Montañez Dones ("Pedro Montañez") is the former president of MS. (Id. at 4 ¶ 14). Carlos Montañez Dones ("Carlos Montañez") and his wife, Juanita Torres Roldan ("Torres"), are the owners of the parcel of land and the Gas Station located at #106 José De Diego St., San Lorenzo, Puerto Rico. (Docket No. 1 at 4 ¶ 15).

Civil No. 19-1935 (GMM)
Page -3-

On September 18, 2014, TPPRC entered into a *Lease Agreement* with Carlos Montañez and his wife Torres, through their conjugal partnership ("Montañez-Torres Conjugal Partnership") for the use of their property, located at #106 José De Diego St., San Lorenzo, Puerto Rico. The *Lease Agreement* included the Gas Station. (Docket No. 1 at 7 ¶ 27). The *Lease Agreement* was later ratified into a *Deed of Lease* ("*Deed*") on March 5, 2015. (Id.; Docket No. 31-1). The *Deed* was duly registered in the Puerto Rico Property Registry. (Docket No. 1 at 7 ¶ 27). The *Deed* has a term of twelve years, starting on October 1, 2014, and ending on September 30, 2026. (Docket Nos. 1 at 7 ¶ 28; 31-1 at 6). The *Deed* grants TPPRC the right to designate a party as a franchisee, who is entitled to operate the Gas Station by means of a sub-lease and/or fuel supply agreement. (Docket No. 31-1 at 9-10). The *Deed* further grants TPPRC the right to unilaterally sub-lease, assign, or mortgage the *Deed*, in whole or in part, without the prior consent of the Montañez-Torres Conjugal Partnership. (Id. at 15).

To that extent, on December 10, 2015, TPPRC entered into a *Sub-Lease Agreement* with MS, for the use and operation of the Gas Station ("*Sub-Lease Agreement*"). (Id. ¶ 33; Docket No. 30-2). The main consideration of the *Sub-Lease Agreement* is the ability to sell fuel and provide all associated services at the Gas Station under the TOTAL brand. Pursuant to the *Sub-Lease Agreement*, TPPRC and/or its affiliates are the exclusive owners of the TOTAL brand.

Civil No. 19-1935 (GMM)
Page -4-

(Docket Nos. 1 at 8-9 ¶ 37; and 30-2 at 5). Thus, the franchisee's use of the TOTAL brand is limited to the operation of the Gas Station under the brand and the sale of TOTAL branded products. (Docket Nos. 1 at 8-9 ¶ 37; and 30-2 at 5).

The *Sub-Lease Agreement* prohibits MS from transferring or assigning the same, without the prior written consent of TPPRC. (Id. at 11, 23). Any such transfer or assignment without the prior written consent of TPPRC are grounds for the termination of the *Sub-Lease Agreement*. (Id. at 20-21). The *Sub-Lease Agreement*'s sub-leasing right over the Gas Station ran from January 1, 2016, through December 31, 2019. (Id. at 3).

Concurrently to the execution of the *Sub-Lease Agreement*, TPPRC and MS entered into a *Sale and Supply Agreement*, through which TPPRC sells and supplies to MS gasoline, motor fuel, and other oil products under the TOTAL brand for their sale at the Gas Station. (Docket Nos. 30-2 at 1 ¶ C; and 30-3 at 2 ¶ D). The *Sale and Supply Agreement* ran from December 1, 2015, through November 30, 2018. (Docket No. 30-3 at 5).

The *Sale and Supply Agreement* (together with the *Sub-Lease Agreement*, the "*Franchise Agreements*") grants MS the right to use TPPRC's equipment, gasoline pumps, and other assets used for the sale of gasoline and motor fuels, which are located at the Gas Station. (Docket No. 30-2 at 1 ¶ C). A breach of either the *Sub-Lease Agreement* or the *Sale and Supply Agreement* constitutes a

Civil No. 19-1935 (GMM)
Page -5-

breach of both agreements. (Docket Nos. 1 at 8 ¶ 34; and 30-2 at 25-26) ("The parties agree that both the nature and the subject of the agreements signed on this date are so expressly tied to each other, a breach of any of the provisions, clauses, terms and conditions of any of the Supplementary Agreements shall entitle [TPPRC] to terminate and not renew the existing business relationship, that is, this Agreement and the Supplementary Agreements.").

The *Sale and Supply Agreement* provides that MS will buy, receive, and pay for the TOTAL brand products and will pay for each delivery of TOTAL petroleum products by direct deposit from its bank account. (Docket No. 30-3 at 4). Moreover, pursuant to the *Sale and Supply Agreement*, MS can only use the marks, registered marks, trademarks, names, service distinctions, and/or color patterns that TPPRC authorizes MS to use as part of the operation of the Gas Station. (Id. at 9-10). Under the *Franchise Agreements*, MS must obtain TPPRC's prior written consent prior to assigning or transferring all or part of its obligations under the *Sale and Supply Agreement*. (Id. at 22).

According to TPPRC, on April 24, 2019, MS assigned or transferred to Casellas its rights and obligations under the *Franchise Agreements* ("secondary agreement"). (Docket Nos. 1 at 15 ¶ 63; and 30-5 at 1). Pursuant to such agreement, Casellas would pay Carlos Montañez a monthly rent of $1,000 for a term of ten

(10) years, from May 1, 2019, to May 1, 2029. (Docket Nos. 1 at 15 ¶ 63; 30-5 at 1). According to TPPRC, Casellas claims to be the authorized retailer and tenant of the Gas Station by virtue of the secondary agreement between MS and himself. Carlos Montañez nor MS requested prior written authorization from TPPRC to transfer or assign the *Franchise Agreements* to Casellas. (Docket No. 1 at 15 ¶ 64). TPPRC did not consent to the transfer of the *Franchise Agreements*. (Id.).

TPPRC contends that MS represented to it that Casellas was an administrator of the Gas Station. (Docket No. 1 at 16 ¶ 68). Conversely, TPPRC states that Casellas claims that he was the authorized retailer and the person entitled to operate the Gas Station under the *Franchise Agreements*. (Id. at 18 ¶ 79).

Upon these facts, the Court issued its *Opinion and Order* on May 16, 2024. It partially granted TPPRC's request for declaratory judgment. (Docket No. 98). Thereafter, the Court held a damages hearing on November 7, 2024. (Docket No. 125). Prior to the hearing, TPPRC filed *Verified Motion Submitting Prehearing Memorandum, Exhibits Supporting Damages Claimed and for Adjudication of Damages Without Evidentiary Hearing* (Docket No. 109). TPPRC's memorandum focused on lost revenues, specifically as to the income from the gallons of fuel that would otherwise be sold at the relevant gas station, but for Casellas' occupation.

Casellas did not appear at the hearing. During the hearing, TPPRC was represented by counsel. It informed that TPPRC waived damages from incomes deriving from lubricants, antifreeze, coolant, and other products sold at the Gas Station. Hence, TPPRC waived all damages, except for those concerning the lost revenues from the sale of gasoline products up until September 30, 2026, due to Casellas' tortious interference with the franchise agreements. Luis Lladó-Martínez ("Mr. Lladó-Martínez") gave sworn testimony during direct examination for TPPRC. The Court admitted exhibits 1, 2, 3, 4, 5 and 6 into evidence, pending the submission of the original Spanish language documents included as exhibits 1, 2, and 6. This evidence includes certifications of the volume of gasoline products sold for resale from the Station and related revenue since the execution of the *Lease Agreement* until the *Termination Letter*, which reveal the following:

- Certification for the 2014 natural year indicates that TPPRC sold a total of 120,000 gallons of fuel for resale, and the corresponding revenue realized was $345,864.12. (Admitted as Exhibit 1);

- Certification for the 2015 natural year indicates that TPPRC sold a total of 396,000 gallons of fuel for resale, and the corresponding revenue realized was $963.821.17. (Admitted as Exhibit 2);

- Certification for the 2016 natural year indicates that TPPRC sold a total of 368,500 gallons of fuel for resale, and the corresponding revenue realized was $858,219.36. (Admitted as Exhibit 3);

- Certification for the 2017 natural year indicates that TPPRC sold a total of 55,500 gallons of fuel for resale, and the corresponding revenue realized was $137,467.38. (Admitted as Exhibit 4);

- Certification for the 2018 natural year indicates that TPPRC sold a total of 190,000 gallons of fuel for resale, and the corresponding revenue realized was $553,232.75. (Admitted as Exhibit 5); and

- Certification for the 2019 natural year indicates that TPPRC sold a total of 25,000 gallons of fuel for resale, and the corresponding revenue realized was $68,242.95. (Admitted as Exhibit 6).

After the direct examination concluded, the Court posed several questions to Mr. Lladó-Martínez and TPPR's counsel. Foremost, the Court sought to clarify when Casellas started and ceased operations at the Gas Station. The Court understood that Casellas occupied the gas station on May 1, 2019. *See* (Docket No. 1 at 15 ¶ 63). Further, the Court was aware that the last delivery of TPPRC branded fuel to the gas station occurred on July 5, 2019, *see* (id. at 14 ¶ 58), and that TPPRC eventually terminated the relevant franchise agreements on September 27, 2019, via the *Termination Letter* effective immediately and requesting the Station be surrendered on September 19, 2019. *See* (id. at 19 ¶ 83; Docket No. 109 at 11). Moreover, per the parties' filing at Docket No. 40, the Court emphasized TPPRC's statement that as of November 19, 2019, it "[was] in control of its Leased Property. Casellas agreed to the aforementioned takeover of the Property."

Civil No. 19-1935 (GMM)
Page -9-

The Court also inquired as to TPPRC's legal reasoning in claiming damages for lost income up until September 30, 2026, since Casellas was not a party to the *Lease Agreement* between TPPRC and Carlos Montañez and Torres. Upon the inquiries posed, the Court granted TPPR until November 21, 2024, to supplement its memorandum at Docket No. 109.

Specifically, the Court requested that TPPRC: (i) establish under what theory of law Casellas could be held responsible for lost revenues up until September 30, 2026, since Casellas ceded control of the gas station on November 19, 2019, and he was not a party to the *Lease Agreement* (Docket Nos. 30-1 and 311), the *Sub-Lease Agreement* (Docket No. 30-2), nor the *Sale and Supply Agreement* (Docket No. 30-3); (ii) establish when exactly Casellas ceased operating the gas station; (iii) clarify if and when TPPRC regained control of the gas station; and (iv) provide the Court with a detailed attorney's fees memorandum. (Docket No. 125 at 4-5).

On November 9, 2024, TPPRC filed *Informative Motion Submitting Certification of Gallons Sold and Income in Original Spanish Language*. (Docket No. 122). After an extension of time, on December 2, 2024, TPPRC filed *Supplemental Memorandum on Computation of Damages*. (Docket No. 127). Therein, TPPRC explained that the certifications of the volume of gasoline products sold for resale from the Station and related revenue since the execution

of the *Lease Agreement* until the *Termination Letter*, which were admitted into evidence during the damages hearing, establish that on a yearly basis the average amount of gallons sold by TPPRC for resale from the Station was 192,500 gallons, yielding average yearly revenues of $487,807.96. (Id. at 7).

Moreover, as to the Court's inquiries during the hearing, TPPRC reiterated that damages related to loss of revenue for other lines of business besides the sales of gasoline products, that is, what is commonly known as non-fuel businesses, have been expressly waived. Likewise, TPPRC waived any damages for lost revenues for the sale of gasoline products after February 29, 2020. (Id.).

As to the date when Casellas ceased operating the Gas Station and when TPPRC regained control, TPPRC states that "[i]t is beyond dispute that the last purchase of fuel for resale from the Station occurred on July 5, 2019" and that Casellas surrendered the Gas Station on November 19, 2019. (Id.). Thereby, TPPRC argues in favor of the damages deriving from Casella's contract interference. TPPRC posits that Casellas' actions deprived TPPRC of its contractual entitlement to have its gasoline products sold from the Gas Station. In doing so, it interfered with TPPRC's contractual rights subjecting itself to the resulting civil liability due to the loss of revenues for the sale of gasoline products. To that extent, TPPRC further argues that, "there are three (3) windows or periods of time during which Casellas' actions

effectively interfered with its contractual rights resulting in loss of revenues for the sale of gasoline products." (Id. at 9). First, TPPRC points to the last purchase of gasoline products for sale from the Gas Station which was on July 5, 2019. (Id.) Thus, TPPRC argues that from such date and until the termination date (September 27, 2019), Casellas' contract interference effectively deprived TPPRC of related income or revenue, which absent his illegal actions, would have been realized. The main consideration for which TPPRC leased the Gas Station was to sell its gasoline products from the same and Casellas' acts of contract interference from July 5, 2019, to the termination date on September 27, 2019, effectively deprived TPPRC of the related revenue. (Id.)

Second, TPPRC emphasizes that Casellas is also liable for loss of revenue for the period spanning from the Termination Date on September 27, 2019, to the surrender date on November 19, 2019 ("Surrender Date"), which totals 53 days. (Id.). Third, TPPRC reasons that as of the Surrender Date, TPPRC was unable to immediately resume operations and sales of gasoline products from the Gas Station. As explained, since Casellas had removed all trademarks, identifications, logos and signs, a complete rebranding was necessary. (Id. at 10). Also, TPPRC had to identify a new operator, complete related negotiations, and execute new franchise agreements. Further, the new operator needed to obtain its own permits, and maintenance or renewal works needed to be

completed, among other things. Therefore, according to TPPRC, "no degree of diligence by TPPRC would have resulted in the completion of said tasks in less than 90 days. Quite the contrary, the only reasonable assumption is that completing said process and resuming gasoline sales could have easily taken twice that time or 180 days." (Id.). However, TPPRC "waives any claims for damages more than 90 days after the Surrender Date or February 29, 2020." (Id.).

On December 2, 2024, TPPRC filed a *Memorandum of Costs and Attorney's Fees in Compliance with Court Order* seeking attorney's fees and costs in the amount of $67,252.80 as those necessarily and reasonably incurred in the preparation of this litigation. (Docket No. 129).

Thus, in making its damages determination, the Court considers the Complaint's well-pled facts along with the sworn testimony and exhibits presented at the damages hearing held on November 7, 2024. (Docket Nos. 1; 122; 125). The Court also accounts for the supplementary memorandum and exhibits filed by TPPRC at Docket Nos. 127 and 129.

### III.  LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure provides that a Court may enter a default judgment against a party who fails to plead or otherwise defend a claim against it. *See* Avilés-Alicea v. Municipality of San Juan, Civil No. 04-1602 (ADC), 2008 WL 11501535, at *1 (D.P.R. Sept. 16, 2008); Drogueria Betances, LLC

Civil No. 19-1935 (GMM)
Page -13-

v. Young Apparel Empire, Inc., Civil No. 22-01362 (MAJ), 2023 WL
3408567, at *2 (D.P.R. May 12, 2023), corrected, Civil No. 22-
01362 (MAJ), 2024 WL 322336 (D.P.R. Jan. 29, 2024). Under Federal
Rule of Civil Procedure Rule 55(b), "[u]nless plaintiff's claim is
for a sum certain, the party seeking the default judgment must
apply to the Court." United States Dep't of Agric. Farm Serv.
Agency v. Carrasquillo Rodriguez, Civil No. 11-1384 (ADC), 2012 WL
12996277, at *1 (D.P.R. Aug. 1, 2012) (citing Fed. R. Civ. P.
55(b)(2)).

 Specifically, pursuant to Rule 55(b)(2),

> If, in order to enable the court to enter judgment or to
> carry it into effect, it is necessary to take an account
> or to determine the amount of damages or to establish
> the truth of any averment by evidence or to make an
> investigation of any other matter, the court may conduct
> such hearings or order such references as it deems
> necessary and proper and shall accord a right of trial
> by jury to the parties when and as required by any
> statute of the United States.

Fed. R. Civ. P. 55(b)(2); see also KPS & Assocs., Inc. v. Designs
By FMC, Inc., 318 F.3d 1, 18 (1st Cir. 2003); Fox v. Se. Transp.
Inc., 25 F.3d 1037 (1st Cir. 1994). Simply put, following an entry
of default by the Court, "[a] hearing may be required. . .to set
damages when the amount is in dispute or is not ascertainable from
the pleadings." In re The Home Restaurants, Inc., 285 F.3d 111,
114 (1st Cir. 2002); see also Fed. R. Civ. P. 55(b)(2); Ortiz-
Gonzalez v. Fonovisa, 277 F.3d 59, 64 (1st Cir. 2002); HMG Property

Investors v. Parque Indus. Rio Canas*,* 847 F.2d 908, 919 (1st Cir.

1988).

## IV.   APPLICABLE LAW AND ANALYSIS

The Court addresses each of TPPRC's damages claims based on

the evidence on the record and Mr. Lladó-Martínez's sworn testimony

at the November 7, 2024, damages hearing, in addition to all well-

pled facts in TPPRC's Complaint.

The record establishes that: (a) on September 18, 2014, TPPRC

executed a twelve-year *Lease Agreement* with the Montañez-Torres

Conjugal Partnership pursuant to which it became the exclusive and

authorized tenant of the Gas Station; (b) on December 10, 2015,

TPPRC and MS executed two agreements: (i) a *Sub-Lease Agreement*;

and (ii) a *Sale and Supply Agreement*; (c) the last delivery of

TOTAL Brand fuel products to the Gas Station was on July 5, 2019,

and that TPPRC eventually terminated the relevant franchise

agreements on September 27, 2019; and (d) TPPRC was in control of

the Gas Station as of November 19, 2019. (Docket Nos. 1 at 7 ¶ 27,

12 ¶ 46, 8 ¶ 33, 13 ¶ 53, 19 ¶ 83; 109 at 11; 40 at 3 ¶ 9; 125 at

3).

In addition, in the *Opinion and Order* issued on May 16, 2024,

the Court determined that "the Deed entered between the Montañez-

Torres Conjugal Partnership and TPPRC exclusively grants TPPRC the

right to designate a person or entity as a franchisee to operate

the Gas Station by means of a sub-lease and/or fuel supply

agreement." (Docket No. 98 at 18). Also, that "Article 18.1 of the Sub-Lease Agreement obliges MS to obtain TPPRC's written consent prior to assigning or transferring its rights under the Sub-Lease Agreement to a third party such as Casellas." (Id.). Likewise, "Article 20.1 of the Sale and Supply Agreement prohibits the assignment or transfer by MS of its obligations without the prior written consent of TPPRC." (Id. at 18-19). "According to the well-pled factual allegations in TPPRC's Complaint, TPPRC never consented in writing to the transfer or assignment of the Franchise Agreements to Casellas." (Id. at 19). Further:

> Casellas could not have acquired any rights under the Franchise Agreements and thus cannot be considered a retailer or a franchisee under the PMPA. Because Casellas did not acquire any rights under the Franchise Agreements, the Court also finds that Casellas' use and disposition of the TOTAL brand, trade name, trade dress, logos, signage, and other related identification at the Gas Station was and is illegal.

(Id.). The Court added: "[a]s such, without TPPRC's consent, Casellas could never have become a retailer, or a franchisee under the PMPA. Likewise, Casellas could not have acquired any right to use and dispose of the TOTAL brand, without such consent." (Id. at footnote 3). Moreover, the Court concluded that "Casellas was an unauthorized retailer operating the Gas Station and using TOTAL branding without TPPRC's permission. So, TPPRC and Casellas 'operate' in the same trade." (Id. at 21). Also, it was determined

that "Casellas and MS ultimately failed to operate the Gas Station and/or remove the TOTAL trademarks" (Id. at 26).

Consequently, the damages hearing was set to determine the amount of damages requested in the Complaint: *Seventh Cause of Action: Damages from Breach of Contract*; *Eighth Cause of Action: Indemnification and Damages*; *Ninth Cause of Action: Contract Interference*; and *Tenth Cause of Action: Treble Damages, Attorney's Fees, and Expenses*. As stated, however, TPPRC reiterated at the hearing that it waived the damages related to loss of revenue for non-fuel businesses. (Docket Nos. 125 at 2; 109 at 4 and 7). Also, TPPRC waived damages for lost revenues for the sale of gasoline products more than 90 days from the *Surrender Date*, or February 29, 2020. (Id.).

Hence, as to the damages regarding breach of contract, indemnification and tortious interference, the Court adopts the applicable standard under Puerto Rico law; i.e., "[u]nder Puerto Rico law, a claim for breach of contract has three elements: (1) a valid contract; (2) a breach by one of the parties to the contract; and (3) resulting damages." R&T Roofing Contr., Corp. v. Fusco Corp., 265 F.Supp.3d 145, 154 (D.P.R. 2017) (*citing* 31 L.P.R.A. § 3018). "If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed. If the words should appear contrary to the evident intention of the contracting

Civil No. 19-1935 (GMM)
Page -17-

parties, the intention shall prevail." 31 L.P.R.A. § 3471. "It is
basic law that in a contract case, the plaintiff has the burden of
proof to show that there was a contract and a breach." <u>Muniz-
Olivari v. Stiefel Laboratories, Inc.</u>, 496 F.3d 29, 38 n.7 (1st
Cir. 2007). To be sure, the validity of the contracts in question
is undisputed. But Casellas is not a party to those contracts.
Therefore, any request for monetary damages under a breach of
contract cause of action necessarily fails.

Although damages under a breach of contract cause of action
are unfounded, TPPRC can recover for tortious interference under
Puerto Rico law. To do so, it must establish: "(1) the existence
of a contract between two or more parties, (2) interference with
that contract by the defendant, (3) 'fault' on the defendant's
part, (4) damage to the plaintiff, and (5) a nexus between the
plaintiff's damage and the defendant's fault." <u>New Comm Wireless
Servs., Inc. v. Sprintcom, Inc.</u>, 287 F.3d 1, 9 (1st Cir. 2002)
(<i>citing</i> <u>Gen. Office Prods. Corp. v. A.M. Capen's Sons, Inc.</u>, 115
P.R. Offic. Trans. 727, 734 (1984)). Again, this Court already
determined that Casellas was never an authorized retailer, nor did
he constitute a franchisee under the PMPA. Casellas' actions
intentionally deprived TPPRC of its entitlement under the
franchise agreements to have its gasoline products sold from the
Gas Station and effectively interfered with TPPRC's contractual
rights, thus causing damages linked to such interference. Also,

from the record, the Court can plainly infer that Casellas acted in a willful manner. *See* Jusino Figueroa v. Walgreens of San Patricio, Inc., 2001 TSPR 150 (2001); Future Development of Puerto Rico v. Estado Libre Asociado de Puerto Rico, 26 F.Supp.2d 228, 241 (D.P.R. 2003). Therefore, considering the record and taking the allegations of the Complaint as true, TPPRC successfully stated a cause of action for tortious interference.

Damages in a tortious interference claim are determined pursuant to Puerto Rico's general tort statute, Article 1802 of the Puerto Rico Civil Code. 31 L.P.R.A. § 5141. In relevant part, the statute provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." Id. Accordingly, the Court finds that Casellas is liable for the loss of revenue for the period he illegally possessed the Gas Station. To that extent, after review of the certifications admitted into evidence during the damages hearing, the Court determines that these establish that the average amount of gallons sold by TPPRC for resale from the Gas Station was 192,500 gallons, yielding average yearly revenue of $487,807.96, which in turn yields an average daily revenue of $1,336.46. Therefore, since the *Surrender Date* was on November 19, 2019, the Court multiplies the average daily revenue by the 137 days elapsed since the last purchase of gasoline

products for sale from the Gas Station, which was on July 5, 2019. Hence, the loss revenue for that period amounts to **$183,095.02.**

In addition, it is undisputed that as of November 19, 2019, TPPRC was unable to immediately resume operations and sales of gasoline products from the Gas Station. As of that date, TPPRC had to complete a rebranding because Casellas had removed the TOTAL brand trademarks, identifications, logos, and signs from the site; to identify a new operator, complete related negotiations and execute new franchise agreements; and to perform maintenance or renewal works needed to be completed, among other operations. TPPRC waived any claims for damages more than 90 days after the *Surrender Date*. Therefore, using the same mathematical exercise, the Court also finds that as a direct result of Casellas' contractual interference with TPPRC's contractual rights, TPPRC lost further revenues in an amount of **$120,281.40.**

As to the attorney's fees and costs, TPPRC seeks a total award of $67,252.80. In support of this award TPPRC submitted detailed time records of the services rendered and a declaration under penalty of perjury.

Per the "American Rule" practiced in the United States, "parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." MB Auto Care Management, Inc. v. Plaza Carolina Mall, L.P., 755 F.Supp.2d 382, 384 (2010) (*citing* Buckhannon v. West Va. Dept. of

Civil No. 19-1935 (GMM)
Page -20-

Health, 532 U.S. 598, 602 (2001)); *see also* Fed. R. Civ. P. 54
(2)(B). In other words, the general rule is that a prevailing party
in a case must bear its own attorney's fees and may not collect
them from the losing party unless there is an enforceable contract
or a statutory provision providing for attorney's fees. *See*
Buckhannon v. West Va. Dept. of Health, 532 U.S. 598, 602 (2001).

However, in the absence of a statutory or contractual
provision, Puerto Rico state law governs this issue in a Court
sitting under diversity jurisdiction. *See* Peckham v. Cont'l Cas.
Ins. Co., 895 F.2d 830, 841 (1st Cir. 1990). Rule 44.1(d) of the
Puerto Rico Rules of Civil Procedure states in pertinent part,
"[i]n the event any party or its lawyer has acted obstinately or
frivolously, the court shall, in its judgment, impose on such
person the payment of a sum for attorney's fees which the court
decides corresponds to such conduct." P.R. Laws Ann. tit. 32, App.
III, Rule 44.1(d). For the Court to determine that the losing party
has been obstinate, it must find that the party has been
"unreasonably adamant or stubbornly litigious, beyond the
acceptable demands of the litigation, thereby wasting time and
causing the court and the other litigants' unnecessary expense and
delay." De León-López v. Corporación Insular de Seguros, 931 F.2d
116, 126-127 (1st Cir. 1991). This seeks to penalize a party whose
"stubbornness, obstinacy, rashness, and insistent frivolous
attitude has forced the other party to needlessly assume the pains,

costs, efforts, and inconveniences of a litigation." Top
Entertainment, Inc. v. Torrejón, 351 F.3d 531, 533 (1st Cir. 2003)
(*quoting* Fernández v. San Juan Cement Co., 118 D.P.R. 713, 718
(1987)).

Turning to the situation at bar, although these proceedings
were litigated in default, the very filing of this case was
necessary due to Casellas' unlawful actions and obstinacy to
surrender the Gas Station. Therefore, the instant case represents
the epitome of "pains, costs, efforts, and inconveniences of a
litigation," where TPPRC was forced to sue Casellas to enjoin his
actions and recover damages. Considering the description of
litigation costs submitted by TPPRC, the total amount billed
appears to provide a fair estimate and a reasonable claim. As
such, this Court finds that TPPRC is entitled to the requested
attorney's fees and costs.

### V. CONCLUSION

For the reasons established herein, TPPRC is entitled to the
following damages:

- **lost revenue for gasoline products from July 5, 2019, to
  November 19, 2019: $183,095.02; and**

- **lost revenue from November 19, 2019, to February 29,
  2020: $120,281.40.**

In addition, TPPRC is entitled to $61,979.40 in attorney's fees
and $5,273.40 in costs, totaling **$67,252.80**.

**Civil No. 19-1935 (GMM)**
**Page -22-**

Judgment shall be entered accordingly.


IT IS SO ORDERED.

In San Juan, Puerto Rico, January 23, 2025.

<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE